968 F.2d 22
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David Glen USSERY, Defendant-Appellant.
 No. 91-2272.
 United States Court of Appeals, Tenth Circuit.
 June 16, 1992.
 
 Before LOGAN, BARRETT and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 Defendant David Glen Ussery was charged with possession of ethel ether and acetic anhydride knowing it to be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(2), and aiding and abetting, in violation of 18 U.S.C. § 2. The district court found that there was probable cause to search the car in which defendant was a passenger at the time he was arrested, and it denied his motion to suppress as evidence the chemicals found in the car. Defendant entered a conditional guilty plea pending appeal of this ruling. We affirm.[1]
 
 
 2
 "When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. The ultimate determination of reasonableness under the fourth amendment is a question of law, which we review de novo." United States v. Arango, 912 F.2d 441, 444 (10th Cir.1990) (citations omitted), cert. denied, 111 S.Ct. 1318 (1991).
 
 
 3
 Responding to a tip from a confidential informant, a special agent of the federal Drug Enforcement Agency (DEA) set up surveillance at a retail chemical business in Albuquerque, New Mexico. The informant had stated that an individual, bearing a certain general description and driving a maroon or burgundy Oldsmobile bearing Texas license plates with a certain number, intended to purchase acetic anhydride, methanol, ethel ether, and some glassware at the store. The special agent and the informant discussed the probability that the chemicals were being purchased to manufacture a controlled substance. The agent determined that the car was registered to a woman from Lake Jackson, Texas, 800 miles from Albuquerque, and he then set up surveillance at the chemical business named by the informant. The described car arrived at the store shortly thereafter, and the male driver, who met the general description given in the tip, was observed going into the business, then driving around to the back of the building and loading several white five-gallon containers into the trunk. The agent followed the car, which proceeded to a motel where it was parked in the shade at one side of the motel. Defendant and another individual brought various items to the car from a room on the other side of the motel and packed the car. The two men then drove the car to an east-bound interstate highway and were headed out of the area on the interstate when the special agent requested that local police stop the car. They did so, and when the special agent arrived, he informed defendant and the other occupant of the car that an investigation was being conducted into the purchase of chemicals to be utilized in the illicit manufacture of drugs. The special agent searched the car without warrant or consent and found the chemicals named in the indictment.[2] Defendant and his companion were arrested.
 
 
 4
 Defendant moved that evidence of the chemicals' presence in the car be suppressed because he claimed that the government did not have probable cause to search the car, given the information the special agent had prior to the search.[3]
 
 
 5
 [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be ... useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.
 
 
 6
 A "practical, nontechnical" probability that incriminating evidence is involved is all that is required....
 
 
 7
 "... Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same--and so are law enforcement officers."
 
 
 8
 Texas v. Brown, 460 U.S. 730, 742 (1983) (citations omitted); accord United States v. Padilla, 819 F.2d 952, 962 (10th Cir.1987).
 
 
 9
 At the suppression hearing, defendant submitted the offer of proof of an expert witness, a chemist. The expert testified that the chemicals seized from the car had so many common uses that presumption of their use for the production of controlled substances was unwarranted. The court ruled that what the expert witness knew and testified about the chemicals was irrelevant. It ruled that the test for probable cause to search was determined by what the special agent knew and observed about defendant, defendant's conduct, and the chemicals at the time of the search. The district court was correct; probable cause is measured from the perspective of the trained law enforcement officer. See Texas v. Brown, 460 U.S. at 742.
 
 
 10
 The special agent testified in detail about the conclusions he reached based on the facts given to him by the confidential informant and the conduct he observed.[4] The district court ruled that this testimony was sufficient to support probable cause for the search. To the extent that this conclusion was based on factual findings that the defendant's conduct raised the agent's suspicions to the level necessary to support probable cause, these findings were not clearly erroneous. And, as a matter of law, the tip given to the special agent by the confidential informant, combined with the observations made by the special agent prior to defendant's arrest, provided sufficient basis for probable cause for the search here in question.
 
 
 11
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 Specifically, the search revealed twenty gallons of ethyl ether, one gallon of acedic anhydride, 500 grams of bromic acid, one gallon of methanol, a computer, miscellaneous papers and documents about the chemical sale, and a formula for the manufacture of amphetamine or methamphetamine
 
 
 [3]
 Defendant conceded that the special agent had reasonable suspicion to stop the car in which defendant was riding
 
 
 [4]
 The DEA special agent involved in this case had special training in the detection of clandestine lab operations and had been involved in approximately 150 investigations concerning clandestine labs. The agent testified as to the credibility of the confidential informant and said that that informant had communicated information for about twenty cases for the special agent. The informant's descriptions of the car, the defendant, and the activity at the chemical business were accurate. The informant also said that defendant would be purchasing chemicals commonly used in the manufacture of amphetamines or methamphetamines. Such chemicals were packaged and sold at the business where defendant was seen purchasing the chemicals in containers such as those the agent observed defendant place in the trunk of the car. The car was registered to a woman living 800 miles away in an adjacent state, and sales of precursor drugs are often made in states away from the location of clandestine laboratories, even though the same chemicals are available in the lab's general locale. The car was registered to a woman ("Teena Monical"), and both defendant and his companion were males, raising questions about their possession and use of the car. Defendant's activity around a motel was significant to the agent because, in his experience, motel rooms are used as labs or are an indication that the individuals are not "locals." Parking the car in the shade was significant to the agent because ethyl ether is very volatile and the heat from the sun could release the ether in vapor form. Defendant and his companion packed up the car and headed east out of town, raising the inference that they were driving back to Texas